# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 12-cv-01481-JLK

CHRISTOPHER TYRONE SALAZAR,

    Plaintiff,

v.

DENVER POLICE OFFICER CARLOS CASTILLO,
DENVER POLICE OFFICER JOHN MEHRTENS,
DENVER POLICE OFFICER WILE MORGHEM,
DENVER POLIC OFFICER SCOTT RIGGS, and
CITY AND COUNTY OF DENVER, Individually and Severally,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Kane, J.

Defendants move to dismiss the instant §1983 excessive force/municipal liability lawsuit per Fed. R. Civ. P. 12(b)(6). (Docs. 15 and 20). Finding the allegations in Plaintiff's Complaint wanting under the standards of *Iqbal* and *Twombley,* I GRANT Defendants' Motions in toto.

## INTRODUCTION

Plaintiff's claims arise out of his arrest on March 13, 2011. *Complaint* (Doc. 1) p. 3, ¶ 5. Plaintiff's first and third claims for relief are asserted against the City and based upon unidentified "policies, customs, or usages;" and/or an alleged failure to properly train and supervise its police officers. *Id*. at p. 4-5, ¶¶ 18-21; p. 7-9, ¶ 34-43. Plaintiff's second and fourth claims for relief are asserted against Defendant Castillo and other, non-moving Denver Police Officers for excessive force in violation of the Fourth Amendment and conspiracy in violation of 42 U.S.C. § 1986. Per Plaintiff's Response, I STRIKE Plaintiff's Claim IV as moot. *Response* (Doc. 16) p. 2, ¶ 3 ("Plaintiff agrees that the lawsuit will not involve a claim under 42 U.S.C.

1

§1986 and that issue is moot."). As to Claims I-III, a review of Plaintiff's Complaint reveals conclusory statements compelling the dismissal of this action as a matter of law.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996). The court's charge is to determine "whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility" that the alleged claim did in fact occur. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556). "The complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk*, L.L.C. 493 F.3d at 1177.

Of course, plaintiffs need not plead the minutiae of their factual allegations. *Twombly,* 550 U.S. at 555 ("detailed factual allegations" are not necessary to survive a motion to dismiss). The point is rather that plaintiffs need to provide more than "labels and conclusions" or "a formulaic recitation of elements of a cause of action." *Id*. Relying on *Twombly*, the 10th Circuit elaborated on the importance and purpose of pleading requirements in *Robbins v. Oklahoma*, 519 F. 3d 1242 (10th Cir. 2008) by stating, "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the

nature of the claim, but also 'grounds' on which the claim rests."(internal quotations omitted). Moreover, the *Robbins* court stressed the need to consider a complaint's allegations against the specific context of the claims brought. *Id.* at 1248.

The context of this case implicates the defense of qualified immunity by state officials and employees who are sued for damages for alleged injuries to Plaintiff's person occasioned by Denver Police Officers. Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.' " *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In this context, plaintiffs must allege facts sufficient to show "the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F. 3d at 1249. This does not mean complaints in cases subject to qualified immunity defenses have heightened pleading standards, but rather "[t]he *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'" *Id.* (internal quotations omitted).

## THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT

In the middle of the night on March 13, 2011, Plaintiff was at his residence, attempting to quell a verbal argument between his parents, Tyrone Peterson and Arlene Peterson. *Complaint* (Doc. 1), p.3, ¶ 6. Having been alerted to the argument by a neighbor, Officer Castillo and Officer Morghem knocked on the Petersons' door. *Id*. at p.3 ¶ 7. Plaintiff's sister, T.P., a juvenile, answered the door and the officers "entered the residence without permission and attempted to determine the nature and cause of the disturbance." *Id*. at p.3, ¶ 8. At some unspecified time thereafter, Plaintiff claims he attempted to walk away from the "disturbance"

toward a back bedroom and was ordered by Officer Morghem "to remain in place." *Id*. at p.3, ¶ 8.

Plaintiff contends Officer Morghem then grabbed his arm and twisted it behind his back "in an attempt to restrain him." *Id*. at p.3, ¶ 9. Plaintiff admits he resisted Officer Morghem and "attempted to free himself." *Id.* According to Plaintiff, he was still struggling with Officer Morghem in an attempt to free himself when Officer Castillo allegedly "began to strike Plaintiff on his left arm with an expandable baton, causing injury to his bicep and arm." *Id*. at p.3, ¶ 10. The Complaint contains no further factual allegations concerning Officer Castillo's alleged conduct. The Complaint does not allege that Officer Morghem used any other force against Plaintiff other than attempting to put his arm behind his back.

According to Plaintiff, Denver Police Officers Riggs and Mehrtens then arrived on scene. *Id*. at 3, ¶ 11. Officer Riggs contacted the Plaintiff ,"began to struggle with him," and, as a result of the struggle, a glass coffee table was broken. *Id*. at  3-4, ¶ 11. Apparently following his struggle with Officer Riggs, Plaintiff alleges that Officer Mehrtens, in some unspecified way, "assisted in slamming" Plaintiff against a wall of the residence "in an attempt to detain" him. *Id*. at 4, ¶ 11. Plaintiff alleges that Officer Mehrtens then struck him in the head with a closed fist and used an elbow strike, which caused an unidentified injury. *Id*. at 4, ¶ 12. Plaintiff admits that his resistance continued and that he was still not "subdue[d]" despite Officer Mehrtens' attempts to detain him. *Id*. at 4, ¶ 13.

As a result, by Plaintiff's own admission, Officer Riggs "utilize[d] his taser in order to subdue" him. *Id*. The taser "struck" Plaintiff "on the right side of his lower chest." *Id*. Plaintiff contends that he suffered "severe pain and injury" due to the use of the taser, but does not identify the nature of the injury. *Id*. Plaintiff was treated by paramedics at the scene,

"specifically for injuries sustained from the use of the taser." *Id*.at 4, ¶ 14.  However, Plaintiff does not allege that he was transported to the hospital as a result of his claimed unspecified injuries; instead, he was taken to the "Denver City Jail [sic] and detained." *Id*. at 4, ¶ 15.

DISCUSSION

*A. Claims against Officer Castillo*

To state a plausible excessive force claim against Officer Castillo, Plaintiff bears the burden of overcoming the defense of qualified immunity.  As discussed above, plaintiffs can prevail over that defense only by alleging facts sufficient to show "the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F. 3d at 1249.  Plaintiff has failed to meet this two-part burden.

"[T]he Fourth Amendment recognizes the right of the police, in making an arrest or stop, 'to use some degree of physical coercion or threat thereof to effect it.'" *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, to state a plausible claim for an the violation of his Fourth Amendment right to be free from excessive force, Plaintiff must allege (1) the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not *de minimis*, be it physical or emotional.  *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

Plaintiff alleges in conclusory fashion that Officer Castillo's use of force was unreasonable, but fails to articulate any facts demonstrating such was the case.  Plaintiff's Complaint merely alleges that *after* he refused to obey Officer Morghem's command "to remain in place," Officer Castillo struck him with his expandable baton in response to Plaintiff resisting

Officer Morghem's hold and that the force allegedly led to an *unspecified* injury to Plaintiff's arm. *See Complaint* (Doc. 1) p. 3, ¶¶ 9-10.  Without more, Plaintiff's conclusory allegations are not sufficient to state a plausible Fourth Amendment claim based upon a theory of excessive force. *Graham*, 490 U.S. at 396 (stating that, when determining the reasonableness of the force used, a court should consider, inter alia, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight").

  *B. Claims against Officer Morghem*

  With respect to Officer Morghem, Plaintiff only alleges that Officer Morghem ordered him to stop when he was attempting to walk away toward a back bedroom during an ongoing domestic disturbance and that Officer Morghem "grabbed Plaintiff"s arm and began to twist it behind [his] back in an attempt to restrain him." *Complaint* (Doc. 1) at p. 3, ¶¶ 8-9. Plaintiff also admits that he actively resisted Officer Morghem by attempting to "free himself." *Id*. at 3, ¶¶ 9-10. As a result, Officer Castillo used his expandable baton to strike Plaintiff on his left arm in an effort to get him to comply. *Id*. at 3, ¶ 10.  The Complaint does not allege that Officer Morghem used any other force against Plaintiff other than attempting to put his arm behind his back.  Thus, nothing in the Complaint suggests Officer Morghem's conduct was objectively unreasonable.

  Furthermore, Plaintiff identifies no injury suffered on account of Officer Morghems use of force, which is another necessary element of his excessive force claim.  *See Cortez*, 478 F.3d at 1129.  Accordingly, as pled, the Complaint fails to state a plausible excessive force claim against Officer Morghem.

  *C. Claims against Officers Mehrtens and Riggs*

When Officers Mehrtens and Riggs arrived on scene, Plaintiff, by his own admission, had already refused to comply with Officer Morghem"s verbal command to remain in place, actively struggled with Officer Morghem "in an attempt to free himself" from Officer Morghem"s attempts to restrain Plaintiff by putting his arm behind his back, and continued his active resistance even when Officer Castillo used an expandable baton to strike him on the left arm. Plaintiff further admits that his active resistance continued even after Officer Mehrtens and Riggs "attempt[ed] to detain" him and that his active resistance did not stop until a Taser was used on him. *Complaint* at 3, ¶¶ 11-13.

Specific to Officers Riggs and Mehrtens, Plaintiff alleges that he first struggled with Officer Riggs and that a glass coffee table was broken as a result of this struggle. *Id.* at 3-4, ¶11. Notably, Plaintiff does not allege that he was thrown or pushed, etc. into the table by Officer Riggs and he fails to indicate how the table broke during the struggle. He also does not claim any injury as a result of the coffee table breaking. According to Plaintiff, Officer Mehrtens then "assisted" in "slamming" Plaintiff against a wall. *Id.* However, Plaintiff fails to describe the nature of Officer Mehrtens alleged "assistance" and he does not identify who he was struggling with at the time this alleged "assistance" was provided. Further, while Plaintiff claims that the wall was damaged in some unspecified way, he does not claim to have suffered any injury as a result of his contact with the wall.

Plaintiff also claims that Officer Mehrtens struck him in the head with a closed first and an elbow strike. Notably again, it is clear from the Complaint that the two strikes to the head occurred as Plaintiff continued his active resistance, as Plaintiff admits that he was not subdued until after the taser was used. *Id.* at 4, ¶¶ 12-13. Plaintiff claims that he was injured as a result of the two strikes, but he does not describe the nature of his alleged injury.

As with the other officers, Plaintiff's allegations against Officers Riggs and Mehrtens are too general and conclusory. The Complaint supplies facts that affirmatively support the inference that both officers' conduct was objectively reasonable based upon the circumstances they confronted, *i.e.,* Plaintiff's continued active resistance. *See Graham*, 490 U.S. at 396-97 (stating that reasonableness "must be judged from the perspective of a reasonable officer on the scene," who is "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). Additionally, Plaintiffs" excessive force claims against Officers Riggs and Mehrtens fail because he does not identify any specific injury which he suffered as a result of their respective uses of force.

In fact, based upon the allegations of the Complaint, it appears that, at most, any injury Plaintiff suffered was *de minimis*, which fails to rise to the level of a constitutional violation. *See Cortez*, 478 F.3d at 1129 (a claim of excessive force requires some actual injury that is not de minimis). For all of these reasons, Plaintiff's Complaint also fails to state a plausible excessive force claim against either Officer Riggs or Mehrtens.

### D. *Municipal liability claims*

Plaintiff's Complaint is also bereft of factual allegations sufficient to support a municipal liability claim against the City. "A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citing *Monell v. NewYork City Dept. of Social Servs.,* 436 U.S. 658, 692 (1978)). "[U]nder Section 1983, local governments are responsible only for 'their

*own* illegal acts.'" *Connick*, 131 S. Ct. at 1359 (emphasis in original). "They are not vicariously liable under §1983 for their employees' actions." *Id.*

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id*. (quoting *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*. "The official policy requirement" serves "to distinguish acts of the *municipality* from acts of *employees* of the municipality" so that "municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). In other words, there must be a "*deliberate* action attributable to the [governmental entity] [that] directly caused a deprivation of federal rights." *Board of County Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 415 (1997) (emphasis in original). "A showing of simple or even heightened negligence will not suffice." *Id.* It is crucial to establish the causation and culpability elements with respect to the governmental entity, otherwise municipal liability collapses impermissibly into vicarious liability. *Id.* at 415.

For a § 1983 claim based on custom or practice to withstand Rule 12(b)(6) dismissal, the plaintiff must sufficiently allege the following:

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees;

(2) Deliberate indifference to or tacit approval of such misconduct by the municipality's policymaking officials after notice to the officials of that particular misconduct; and

(3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant

>    to the custom and that the custom was the moving force behind the
>    unconstitutional acts.
>
> *See Gates v. Unified Sch. Dist.* No. 449, 996 F.2d 1035, 1041 (10th Cir.1993)(emphasis added).

Here, Plaintiff's Complaint does not identify any City policy or custom or any failure to train or supervise by the City which gave rise to the alleged constitutional violations articulated therein. Complaint (Doc. 1) p. 4-5, ¶¶ 17-22; p. 7, ¶¶ 33-43. Instead, Plaintiff's claims against Denver are merely general recitations of the elements of municipal liability, and conclusory allegations of this nature, without more, must be disregarded even under the liberal motion to dismiss standard. Plaintiff cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy, procedure, or failure to train. As presented in the Complaint, Plaintiff's municipal liability claims "rely entirely on the conduct of the [officers] alone," and, therefore, "[plaintiff] can only be alleging *respondeat superior* liability for [the City], which the Supreme Court has ruled cannot support § 1983 liability against municipalities." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (internal citation omitted).

Plaintiff's Response essentially concedes his inability to plead facts in support of his claim by arguing "the discovery process can reveal evidence of an unconstitutional custom or usage." Response [Doc. 16] ¶ 11. Whether discovery may yield evidence of an unconstitutional custom or usage, however, is not the legal standard. "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## CONCLUSION

The allegations in Plaintiff's Complaint do not give rise to a plausible claim of excessive force against any of the named Defendant Officers. As such, all officers are entitled to qualified immunity. Similarly, Plaintiff's Complaint fails to set forth any facts from which municipal liability against City may be imposed. Accordingly, as to all claims, I DISMISS WITHOUT PREJUDICE Plaintiff's Complaint.

DATED:     January 7, 2013                         BY THE COURT:

/s/John L. Kane
United States District Court Judge